**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JEFFREY BOYKIN, ADRIAN BOYKIN,**
**JENIECE BOYKIN, a minor, by and**
**through her Next Friend, JEFFREY BOYKIN,**
**AND JEFFREY BOYKIN, JR., by and through**
**his Next Friend, JEFFREY BOYKIN,**

                    **Plaintiff(s),**          **CASE NUMBER: 04-72387**
                                               **HONORABLE VICTORIA A. ROBERTS**

**v.**

**VAN BUREN TOWNSHIP, a municipal**
**corporation, VAN BUREN TOWNSHIP POLICE**
**DEPARTMENT, an agency of a municipal**
**corporation, DALE HARRISON, an individual**
**and official, CHRIS HAYES, an individual and**
**official, MEIJER, INC., a Michigan corporation,**
**GREGORY CHANEY, an individual, and JASON**
**YOUMANS, an individual,**

                    **Defendant(s).**
_____/

**ORDER**

**I.    INTRODUCTION**

       This matter is before the Court on several motions: 1) Motion for Summary

Judgment on Behalf of Defendants Van Buren Township, Van Buren Township Police

Department, Dale Harrison and Chris Hayes; 2) Motion for Summary Judgment on

Behalf of Defendants Meijer, Chaney and Youmans; and 3) Motion to Exclude Gary

Cumming's Testimony on Behalf of Defendants Meijer Chaney and Youmans.  For the

reasons stated below, the Motions for Summary Judgment are **GRANTED**.  The Motion

to Exclude Gary Cumming's Testimony on Behalf of Defendants Meijer Chaney and

Youmans is deemed **MOOT**.

II.     **BACKGROUND**

This case arises from Plaintiff Jeffrey Boykin's arrest for retail fraud on April 12, 2004.[1]  Plaintiff brings this action against Defendants Van Buren Township ("VBT"), Van Buren Township Police Department ("VBT-PD"), Van Buren Township police officers Dale Harrison and Christopher Hayes, Meijer, Inc. ("Meijer"), and Meijer employees Gregory Chaney and Jason Youmans.

Most of the relevant facts are undisputed.  They are taken from the parties' briefs and videotapes of Plaintiff's arrest.  On April 12, 2004, Plaintiff went to the Meijer store in Belleville, Michigan.  Plaintiff went through the checkout lane to purchase, among other things, a drill.  At the register, he learned that the drill was only $5.00 and decided that he wanted two of them.  The cashier rang him up for a second drill.  He left the bag with his other purchases with the cashier and went back for the second drill.  When he returned, the cashier was with another customer.  So, Plaintiff says that he just picked up his bag after the cashier acknowledged him with a nod, placed the second drill inside, and left the store.

Meijer loss prevention officer Defendant George Chaney first observed Plaintiff when he went to pick up the second drill.  He did not see that Plaintiff had gone through the checkout lane already.  He saw Plaintiff take a drill from the shelf as a "quick selection," *i.e.*, without checking the price or comparing it to anything else.  Chaney

---

[1]Because the claims of Plaintiffs Adrian Boykin, Jeniece Boykin and Jeffrey Boykin, Jr. are wholly derivative, the Court will refer only to Plaintiff Jeffrey Boykin in the singular regarding the claims brought by him.

says he was taught that quick selection is contrary to normal shopping behavior.  After selecting the drill, Chaney says that he followed Plaintiff and saw him walk to an empty checkout lane, place the drill into a bag and leave the store.  There is some dispute as to whether Chaney later reported that Plaintiff put the drill into an empty bag, or whether there were other items in the bag.  Chaney says that he did not see where Plaintiff picked up the bag, because his view of Plaintiff was partially obstructed for two to three seconds by other customers.

As Plaintiff walked through the empty checkout lane, Chaney called another loss prevention officer, Defendant Jason Youmans, to come to the area to assist Chaney in initiating a stop of Plaintiff.  Meijer loss prevention policy requires that two employees be present when a suspected shoplifter is approached or detained.  By the time Youmans arrived, however, Plaintiff was in his car.   Neither Youmans nor Chaney approached Plaintiff because Meijer policy also prohibits employees from approaching a suspect once he is in his vehicle.  So, Youmans called the VBT-PD to report a retail fraud.  He gave a description of: 1) Plaintiff; 2) his car; and 3) the license plate number.

VBT Officers Hayes and Harrison were dispatched to Meijer in response to Youman's call.  While enroute to Meijer, dispatch informed the officers that Meijer loss prevention reported that the suspect was fleeing from the location.  The officers, through dispatch, obtained Plaintiff's address from the license plate number and diverted to his house.

The officers arrived at Plaintiff's home in separate patrol cars.  Officer Hayes was the investigating officer.  Officer Harrison was the assisting officer.  When Plaintiff came to the door, he declined to open it or come out, but he spoke with the officers through

3

the door.  The officers advised that they were investigating a retail fraud at Meijer and that Plaintiff was a suspect.  One of the officers also contacted dispatch and asked that it contact Meijer to get a more detailed description (than a black male wearing a red sweatshirt) and to find out what Plaintiff allegedly took.  Dispatch advised that Plaintiff was accused of taking a drill and provided another description.  Either Chaney or Youmans described Plaintiff as a black male, 6' tall, with a medium build, wearing a red sweatshirt.

Officer Hayes asked that another call be placed to Meijer loss prevention to confirm that there was a "good retail fraud" and whether Meijer wanted Plaintiff to be taken into custody.  Per Officer Hayes, a "good retail fraud" is one that meets Meijer's criteria.  He also described it as one where loss prevention observes a suspect select merchandise, conceal it and leave or attempt to leave the store.  *See* VBT Def. Exh. 5, Dep. of Hayes at pp. 24-25.  After speaking with Chaney or Youmans again, dispatch advised Officer Hayes that there was a "good retail fraud," and indicated that Meijer requested that Plaintiff be taken into custody.

Plaintiff told the officers that he was calling a lawyer.  Just before he opened the door, he instructed his wife to videotape subsequent events.  When Plaintiff opened the door there was some discussion between Plaintiff and the officers.  One of the officers told Plaintiff that he was being charged with retail fraud and that he had to accompany them.  Plaintiff questioned the basis of the accusation.  He maintained his innocence. One of the officers indicated that he did not know why Plaintiff was being accused but that they were going to go to Meijer to find out.  Plaintiff indicated that he paid for his purchases at the cash register and asked that he be allowed to get the receipt from his

4

garage.  The officers declined to let him leave the front door, but agreed to wait while

Plaintiff's wife looked for the receipt.  In response to Plaintiff's request that he be

allowed to retrieve his receipt, the officer told Plaintiff that Meijer had everything on

video camera.  Plaintiff stepped outside and was taken into custody and handcuffed.

Before leaving Plaintiff's house, the officers went with Plaintiff into the garage

while his wife looked for the receipt.  It is not clear from the videos when Plaintiff learned

that he was alleged to have stolen a drill, but he repeatedly denied doing so while in the

garage.  Also while in the garage, one of the officers saw and picked up a Meijer bag

and two drills.  Plaintiff told him to bring the entire bag, the contents of which he said

that he had just bought, and the two drills.  Plaintiff's wife was unable to find the receipt

and Plaintiff said that he did not know where it was.  Plaintiff eventually told his wife to

discontinue the search; he agreed to go with the officers.  The officers took Plaintiff and

the merchandise to the store.

At the store, Chaney and Youmans met Officer Hayes at the entrance.  Chaney

confirmed that Plaintiff was the suspect and described what he saw.  Chaney and

Youmans then left the area to prepare their reports.  Officer Hayes prepared to take

Plaintiff to the police station.  However, after hearing the discussion between Chaney

and Youmans and the police officers, Plaintiff says that it occurred to him why they

thought he committed retail fraud.  He then explained his actions at the register to

Officer Hayes and asked that his story be confirmed with the cashier.  Officer Hayes

had dispatch call Chaney back to the front of the store.  Per Chaney, both he and

Youmans went back to the entrance.  Officer Hayes says that he relayed Plaintiff's

version of events and asked Chaney to talk to the cashier.  Chaney went inside and

5

checked the register journal for the lane Plaintiff said that he went through.  Youmans talked to the cashier.  Both confirmed that Plaintiff purchased the second drill.

Chaney apologized to Plaintiff.  Officer Hayes removed Plaintiff's handcuffs, returned his merchandise, and also apologized.  He advised Plaintiff that he was free to leave with his wife, who had arrived at the scene.  At Plaintiff's request, however, Officer Hayes drove Plaintiff back to his house and released him there.  Plaintiff said that he wanted the officer to take him back home in the patrol car because of the embarrassment the incident caused him with his family and neighbors.

Plaintiff says that he did not tell the officers his version of events until they returned to the store because the officers were unable to explain what exactly Meijer claimed that he had done.  Moreover, Plaintiff says that, contrary to Defendant Harrison's assertion that Plaintiff refused to explain, the officers cut him off every time he attempted to give an explanation.

After the incident, Chaney was cited for a training violation.  He was advised by his supervisor, Carl Winekoff, that he was not supposed to call the police unless he first identified himself to the suspect.  Chaney testified and Winekoff confirmed, however, that Chaney was instructed by a prior supervisor that he could contact the police under the circumstances presented in this case.  Meijer Def. Exh. S at pp. 83-84.  Mr. Winekoff said that he still issued the violation as a means of changing that policy.  *Id.* Another policy Mr. Winekoff testified about is that Meijer only contacts the police when it intends to prosecute.  Winekoff and Chaney acknowledged that Meijer does not prosecute if the item is under $35.00 and the person does not have a criminal history with the store.

6

In his Second Amended Complaint, Plaintiff alleges a number of claims against the "Meijer Defendants," who are Meijer, Chaney and Youmans:  false imprisonment (Count I), violation of 42 U.S.C. §1983 (Count IV), and defamation (Count VI).  Against the "VBT Defendants," VBT, VBT-PD, Hayes and Harrison, Plaintiff alleges: false arrest and imprisonment (Count II) and violation of 42 U.S.C. §1983 (Count III).  Against Meijer alone, Plaintiff alleges premises liability/general negligence and negligent hiring, supervision and training (Count IX).  And, against all of the Defendants, Plaintiff alleges: intentional infliction of emotional distress (Count V), malicious prosecution (Count VII), abuse of process (Count VIII), concert of action (Count X), and civil conspiracy (Count XI).  Against all of the Defendants, Plaintiffs Adrian Boykin, Jeniece Boykin and Jeffrey Boykin, Jr. allege loss of consortium (Counts XII and XIII) and negligent infliction of emotional distress (Count XIV).

The Meijer and VBT Defendants move for summary judgment on all of Plaintiffs' claims.

## III.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).  A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and

7

obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.    ANALYSIS AND APPLICABLE LAW

8

### A.      42 U.S.C. §1983 (Counts III and IV)

#### i.      Defendant Van Buren Township Police Department

Plaintiff does not refute Defendant VBT-PD's assertion that it is not a legal entity against which federal or state suit can be brought.  As VBT-PD asserts, under Michigan law, a police department is merely an agency of the city it serves.  *See Laise v Utica,* 970 F.Supp. 605, 608 (E.D. Mich. 1997); *Pierzynowski v Police Dept. City of Detroit*, 941 F.Supp. 633, 637 n.4 (E.D. Mich. 1997); *Adams v City of Marshall*, 2005 W.L. 3556146, *2 (W.D. Mich. 2005); *McPherson v Fitzpatrick*, 63 Mich. App. 461, 463-464 (1975).  The city, Van Buren Township in this case, is the real party in interest.  *Id*. Therefore, VBT-PD's motion for summary judgment on all claims is granted.

#### ii.      Defendants Hayes and Harrison

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law."[2]  *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir. 2003).  It is undisputed that Defendants Hayes and Harrison were acting under color of state law, and Plaintiff alleges they deprived him of his Fourth Amendment right not to be arrested without probable cause, and his Fourteenth Amendment rights not to be

---

[2]42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

deprived of liberty without due process and to equal protection.  However, because

Plaintiff failed to respond to Defendants' motion for summary judgment on the equal

protection claim, the Court presumes that Plaintiff abandoned it.  The Court will only

consider Plaintiff's probable cause and due process claims.

Defendants deny any constitutional violation and assert that they are entitled to

qualified immunity in any event.  Where the defense of qualified immunity is raised, the

better approach is to determine first whether a constitutional violation has been

established:

> A court required to rule upon the qualified immunity issue must
> consider, then, this threshold question: Taken in the light most
> favorable to the party asserting the injury, do the facts alleged show
> the officer's conduct violated a constitutional right? This must be the
> initial inquiry.
>
> * * *
>
> If no constitutional right would have been violated were the
> allegations established, there is no necessity for further inquiries
> concerning qualified immunity. On the other hand, if a violation could
> be made out on a favorable view of the parties' submissions, the
> next, sequential step is to ask whether the right was clearly
> established.

*Saucier v Katz*, 533 U.S. 194, 201 (2001)(internal citation omitted).

### a.    Did the Officers have Probable Cause to Arrest Plaintiff?

A warrantless arrest does not violate the Fourth Amendment if, objectively, the

officer has probable cause to believe that the suspect committed or is committing a

crime.  *Criss v City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).  "The Supreme Court has

defined 'probable cause' as the 'facts and circumstances within the officer's knowledge

that are sufficient to warrant a prudent person, or one of reasonable caution, in

believing, in the circumstances shown, that the suspect has committed, is committing,

or is about to commit an offense.'" *Id* (citing *Michigan v DeFillippo*, 443 U.S. 31, 36 (1979)).  The question for the trial court on summary judgment is "whether the arresting officers were justified in their belief that plaintiff had probably committed or was committing a crime."  *Id* (footnote omitted).  Where a finding of probable cause rests upon disputed questions of fact, summary judgment is inappropriate.  *Gardenhire v Shubert*, 205 F.3d 303, 315 (6th Cir. 2000); *Ingram v City of Columbus*, 185 F.3d 579, 594 (6th Cir. 1999); *Ahlers v Schebil,* 994 F. Supp. 856, 872-873 (E.D. Mich. 1998).

The essence of Plaintiff's claim is that the officers lacked probable cause because they were not entitled to simply rely upon the information that they received from the dispatcher, who was the only one to speak directly with Chaney and Youmans prior to Plaintiff's arrest.  The Court finds that no genuine issues of material fact concerning probable cause are in dispute, and that the officers had probable cause to arrest Plaintiff.  The Northern District of Ohio in *Dorsey v Barber*, 2005 W.L. 2211176, *18 (N.D. Ohio 2005) held that "[j]ust as with reasonable suspicion, in establishing probable cause, police officers can rely on information received from other officers or police dispatches."  *See also Brandenburg v Murphy*, 936 F.2d 572, *3 (6th Cir. 1991)(unpub. op.)(held that officer reasonably relied on information communicated to him by the police dispatcher and his fellow officers to conclude that there was probable cause to arrest plaintiff).  However, if the information an officer obtains from dispatch is not based on articulable facts that support probable cause, the officer's reliance on the information, without more, is also constitutionally deficient.  *United States v Hensley,* 469 U.S. 221, 232 (1984).

The Court finds in this case that the information dispatch received from Chaney

11

and Youmans was sufficient to establish probable cause to arrest Plaintiff for retail fraud.  "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing."  *Criss*, 867 F.2d at 262.  "The probability of criminal activity is assessed under a reasonableness standard based on an 'examination of all facts and circumstances *within the officer's knowledge at the time of an arrest.*'"  *Crockett v Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003)(*quoting Estate of Dietrich v Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999))(emphasis in original).  Over a series of phone calls prior to Plaintiff's arrest, Chaney and Youmans, in their capacity as loss prevention officers at Meijer, relayed the essential facts to dispatch--that a person fitting Plaintiff's description and driving a car registered to his address left Meijer with a drill that he failed to pay for.  When the source of the allegations and the claims made are considered, the information obtained by dispatch was unquestionably sufficient to establish the probability that a crime was committed.

Importantly, the information received from dispatch was confirmed once the officers reached Plaintiff's home and spoke to him.  Then, they were able to further determine that there was a probability that Plaintiff was the perpetrator.  Plaintiff fit the physical description.  And, during the course of their discussions with him, Plaintiff acknowledged that he was at Meijer and that he was in possession of a drill from Meijer.  Prior to placing him under arrest, the officers were not obligated to presume the truth of or further investigate Plaintiff's insistence that he paid for the drill, since he was unable to produce a receipt to substantiate his claim.  *See Crockett*, 316 F.3d at 581 ("Once the officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect.");  *Criss*, 867 F.2d at 263

12

("A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.).

In short, Plaintiff's Fourth Amendment rights were not violated because there was probable cause for the officers to place Plaintiff under arrest, based upon their own observations and the information they received from dispatch. Without an underlying constitutional violation to support a §1983 claim, the question of qualified immunity is moot. *Adams v City of Auburn Hills,* 336 F.3d 515, 520 (6th Cir. 2003).

> **b.  Did Defendants Violate Plaintiff's Right to Due Process?**

The second ground upon which Plaintiff asserts his §1983 claim is the alleged deprivation of his due process rights in violation of the Fourteenth Amendment. Plaintiff indicates in his brief that he is asserting a substantive, rather than procedural, due process claim. The Sixth Circuit recognizes two types of substantive due process claims: "(1) deprivation of a particular constitutional guarantee and (2) actions that 'government officials may not take no matter what procedural protections accompany them,' alternatively known as actions that 'shock the conscience.'" *Braley v City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990).

The first type includes "claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute." *Mertik v Blalock,* 983 F.2d 1353, 1367 (6th Cir. 1993). The second type is "official misconduct, which although not infringing on a fundamental right, is so literally 'conscience shocking,' hence oppressive, as to rise to the level of a substantive due process violation." *Howard v Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). There is no bright-line test for when conduct meets the

standard for the second type of claim; it depends on the facts of the case.  *Bowers v City of Flint*, 325 F.3d 758, 767 (6th 2003).  But, the Supreme Court has said that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience shocking level."  *County of Sacramento v Lewis*, 523 U.S. 833, 849 (1998).  Such a claim must be based on intentional, rather than negligent, conduct.  *Wilson v Beebe*, 770 F.2d 578, 586 (6th Cir. 1985).

Plaintiff has not presented evidence which supports either type of claim.  Without offering specific argument in support, Plaintiff says that he bases his claim on a "deprivation of liberty."  The Court presumes that he is referring to the officers' alleged violation of his Fourth Amendment right to be free from unreasonable seizures.  For the reasons stated, however, the officers' arrest of Plaintiff did not violate his Fourth Amendment rights, and Plaintiff has not identified any other constitutional or statutory basis for his claim.  Plaintiff also does not argue or present any evidence in support of the second type of substantive due process claim.  In fact, there is no basis for Plaintiff to assert that his arrest under the circumstances in this case rises to a conscience shocking level.  Consequently, Plaintiff failed to establish a Fourteenth Amendment violation, and the question of qualified immunity is moot for this claim as well.  Defendants Hayes and Harrison's motion for summary judgment is granted.

### iii.    Defendant Van Buren Township

"To prevail in a §1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom."  *Thomas v City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)(*citing Monell v Dep't of*

14

*Social Services*, 436 U.S. 658, 694 (1978), *cert. den.,* 126 S. Ct. 338 (2005)).  A

municipality cannot be held vicariously liable under §1983 on a *respondeat superior*

theory.  *Monell*, 436 U.S. at 691.  In light of the Court's finding that there was no

constitutional violation by Defendants Hayes or Harrison, Plaintiff's claim of municipal

liability by VBT necessarily fails.  Defendant VBT's motion for summary judgment is

granted.

### iv.    Defendants Meijer, Chaney and Youmans

Plaintiff alleges in his Second Amended Complaint that the Meijer Defendants

deprived him of his Fourth and Fourteenth Amendment rights.  In their initial motion, the

Meijer Defendants only moved for summary judgment on Plaintiff's Fourteenth

Amendment equal protection claim.  In response, Plaintiff withdrew the equal protection

claim but argued that there was a Fourth Amendment violation on the same grounds

asserted against Defendants Hayes and Harrison--that he was arrested without

probable cause.  Plaintiff did not make any argument regarding the Fourteenth

Amendment due process claim.  In their Reply brief, the Meijer Defendants requested

summary judgment on both the Fourth Amendment claim and the remaining Fourteenth

Amendment due process claim, although Defendants presumed that Plaintiff was

asserting a procedural rather than substantive due process claim.  Despite these

procedural defects, the Court will address both constitutional claims.

The preliminary question is whether a §1983 claim is viable against the Meijer

Defendants since they are private citizens.  A §1983 claim typically cannot be brought

against private citizens because they are not considered "state actors."  *Tahfs v Proctor*,

316 F.3d 584, 590 (6th Cir. 2003)("A plaintiff may not proceed under §1983 against a

15

private party 'no matter how discriminatory or wrongful' the party's conduct."). A private

citizen can, however, become a state actor and be treated as such under §1983 if:

> (1) the deprivation complained of was "caused by the exercise of some right or privilege created by the State" and (2) the offending party "acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."

*Id* at 591 (*quoting Lugar v Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). The Sixth

Circuit applies three tests to determine whether private conduct is attributable to the

state--the public function test, the state compulsion test, and the nexus test:

> The **public function test** requires that the private entity exercise powers which are traditionally exclusively reserved to the state.... The **state compulsion test** requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the **nexus test** requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Id* (emphasis added). Plaintiff asserts that the Meijer Defendants' status as state actors

is established under the public function and nexus tests.

The Meijer Defendants concede state action and utterly fail to address this

important element of a §1983 action. The Court does not believe that either test

asserted by Plaintiff applies. In an analogous case, the Sixth Circuit declined to find

that a private security officer was a state actor under the public function test. In

*Chapman v Higbee Company*, 319 F.3d 825 (6th Cir. 2003), *cert. den.*, 542 U.S. 945

(2004), a Dillard Department Stores security officer suspected plaintiff of theft. The

security officer was an off-duty sheriff's deputy, who was wearing his official sheriff's

department uniform, badge and sidearm.  The officer detained plaintiff and required her

to comply with a strip search, but found no evidence of theft.  Plaintiff filed a §1983

claim against Dillard and attempted to establish state action under the public function

test.

The *Chapman* Court noted that the public function test has been narrowly

construed to apply to traditional state functions such as holding elections, exercising

eminent domain, and operating a company-owned town.  319 F.3d at 833.  Joining

several other circuits, the Court held that a private security officer's detention of a

suspected shoplifter is not a function exclusively reserved to the state:

> Our sister circuits have consistently held that the mere fact that the
> performance of private security functions may entail the investigation
> of a crime does not transform the actions of a private security officer
> into state action. . . . A merchant's detention of persons suspected of
> stealing store property simply is not an action exclusively associated
> with the state. . . . A storekeeper's central motivation in detaining a
> person whom he believes to be in the act of stealing his property is
> self-protection, not altruism.  Such action cannot logically be
> attributed to the state.

*Id* at 834.

Here, there are even less compelling reasons to attribute the actions of the

Meijer Defendants to the state.  They did not detain Plaintiff.  They merely reported a

suspected crime and, when asked, confirmed their desire that Plaintiff be arrested for

the same.  As in *Chapman,* the Meijer Defendants' actions were undertaken solely in

their own interest in intercepting a suspected shoplifter.

Plaintiff essentially argues, to the contrary, that Defendants effectively exercised

traditional police powers, because Officers Hayes and Harrison relied solely upon the

Meijer Defendants to decide whether there was probable cause for his arrest and

17

consulted Defendants about whether to arrest him.  Therefore, Plaintiff contends that

this case is more analogous to *Romanski v Detroit Entertainment, L.L.C.,* 428 F.3d 629,

637 (6th Cir. 2005), in which the Court held that private security officers who are

"endowed by law with plenary police powers such that they are *de facto* police officers, .

. . may qualify as state actors under the public function test."  The Court disagrees.

First, the evidence indicates that the officers did not simply rely upon the Meijer

Defendants' assessment of probable cause.  Prior to placing Plaintiff under arrest, the

officers confirmed that Plaintiff fit the description and that the vehicle driven by the

suspect was registered to his home.  When the officers questioned him, Plaintiff also

acknowledged being at Meijer and, just before being taken back to Meijer, the officers

learned that Plaintiff was in possession of a drill that Plaintiff said that he purchased

from Meijer.

Second, *Romanski* is distinguishable on its facts.  In *Romanski*, the defendant

worked for the Motor City Casino as a security officer.  She was also licensed under

state law as a private security police officer, which gave her authority to conduct

warrantless arrests while on her employer's premises.  She carried a badge and wore

handcuffs.  Defendant and several other security officers detained Plaintiff after she was

observed removing a five cent token from an unattended slot machine, which violated

the casino policy and was regarded as theft.  In analyzing whether defendant's actions

were attributable to the state, the Court considered two distinct lines of cases, those like

*Chapman* "in which a private actor exercises a power traditionally reserved to it, e.g.,

18

the common law shopkeeper's privilege," and those like *Payton v Rush-Presbyterian*[3] "in which a private actor exercises a power exclusively reserved to the state, e.g., the police power."  The Court found that defendant's authority as a licensed private security police officer was more consistent with the *Payton* line of cases, because, at all relevant times during her interaction with plaintiff, defendant was on duty on the casino premises and had authority to effect warrantless arrests.  Unlike the shopkeeper's privilege at issue in *Chapman*, "which may be invoked by any citizen under appropriate circumstances," the Court said that "the plenary arrest power enjoyed by private security police officers licensed pursuant to [Michigan state law] is a power traditionally reserved to the state alone."  428 F.3d at 638.  Unlike *Romanski*, Plaintiff Boykins was not detained at Meijer and there is no evidence that either Chaney or Youmans had or exercised any authority beyond the "shopkeeper's privilege."  Therefore, *Romanski* does not apply.

Plaintiff also failed to establish that the Meijer Defendants are state actors under the nexus test.  Under the nexus test, "a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself."  *Chapman*, 319 F.3d at 834.  In *Lansing v City of Memphis*, 202 F.3d 821, 833 (6th Cir. 2000), the Court said that a sufficient nexus had not been established when a representative of the defendant non-profit corporation summoned a police officer to assist in the removal of plaintiff from property leased by defendant.  Plaintiff was a street preacher who was

---

[3]184 F.3d 623 (7th Cir. 1999).

19

preaching in an area of a city park that was leased to defendant for a festival.  He refused to move unless asked to do so by a police officer.  At defendant's request, an officer asked plaintiff to move and he complied.  He subsequently sued defendant, among others, for violation of his state and federal constitutional rights.  The Court held that mere "utilization of public services by private actors does not convert private action to state action."  202 F.3d at 831.  More specifically, the Court held that "a mere request for assistance from an available police officer cannot be sufficient to form a nexus between the state and the private action."  *Id* at 833.  The Court reasoned that "[i]f this were all that was required to find state action, then every private citizen who solicited the aid of the police in resolving disputes or in ejecting unwanted persons would be transformed into a state actor."  *Id*.

The Meijer Defendants here did no more than the plaintiff in *Lansing*.  They requested police assistance in apprehending a suspected shoplifter.  Plaintiff cites *Gramenos v Jewel,* 797 F.2d 432 (7th Cir. 1986), for the proposition that a shopkeeper is engaged in state action when the police agree to simply arrest anyone the shopkeeper designates.  As in *Gramenos*, however, there is no evidence of any such agreement between the Meijer Defendants and the VBT officers.  The nexus test does not apply in this case.

Had the Meijer Defendants bothered to brief the state actor element of a §1983 action, the Court would have granted summary judgment on that basis.  But, even if the Court were to presume that the Meijer Defendants were state actors, Plaintiff failed to establish that his constitutional rights were violated under either the Fourth or the Fourteenth Amendment.  With regard to Plaintiff's claim that the Meijer Defendants

20

instigated his arrest without probable cause, the relevant facts are undisputed and do not support the claim.  Chaney saw Plaintiff pick up a drill, walk through an unattended lane, put the drill in a bag without paying and leave.  Probable cause must be assessed based on the facts and circumstances known to Chaney at the time he took action against Plaintiff.  *Criss*, 867 F.2d at 262.  The information known to Chaney when he asked Youmans to call the police indisputably suggested that the drill was stolen.

Plaintiff, contends, however that there were a number of steps that Chaney and Youmans could have and should have taken to further investigate before calling the police.  There is no merit to this assertion.  Presuming *arguendo* that Chaney was a state actor, it is settled that he was not obligated to conduct further investigation once probable cause was established.  *Crockett*, 316 F.3d at 581.  It is true that, in deciding whether there is probable cause, an officer cannot ignore exculpatory evidence known to him.  *Ahlers*, 188 F.3d at 372 ("[O]fficers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone.").  However, there is no evidence in this case that either Chaney or Youmans knew or should have known of any such evidence.

Plaintiff contends otherwise.  Specifically, he suggests that Defendants should have conducted more investigation based on the fact that Chaney saw him put the drill into a bag that contained other items,[4] and because Plaintiff appeared to take the bag

_____

[4]Chaney actually gave conflicting statements about whether there were other items in the bag.  In his incident report, he said that there were other items in the bag.  During his deposition, he said that he could not see whether there were other items in the bag.  The Court will assume *arguendo* that there were other items in the bag.

21

from an open lane which was attended by a cashier.  First, it is immaterial for probable cause purposes whether or not there were other items in the bag.  It is undisputed that Chaney saw Plaintiff pick up an item in the store and walk out without paying for it.  The fact that there were other items in the bag (which Plaintiff may have paid for) does not rule out the possibility that Plaintiff stole the drill.  This was not exculpatory evidence that Chaney was bound to investigate before making a probable cause determination. Second, contrary to Plaintiff's suggestion that Chaney saw from where Plaintiff retrieved the bag, Chaney testified that he did not see where Plaintiff got the bag, because his view of Plaintiff was partially obstructed for two or three seconds, during which time Plaintiff walked past a lane attended by a cashier to the empty lane through which he exited.  There is no evidence which suggests that Chaney was ever under the impression that Plaintiff had any contact with the cashier in the open lane.  Therefore, there is no merit to Plaintiff's assertion that he should have known to question the cashier.

Based on the information known to Chaney at the time the police were called, there was probable cause for the Meijer Defendants to believe that a crime was committed by Plaintiff.  Plaintiff has not submitted any evidence which raises a question of fact regarding whether her Fourth Amendment rights were violated by the Meijer Defendants.  Defendants motion for summary judgment on Plaintiff's Fourth Amendment claim is granted.

The Court will also grant summary judgment to the Meijer Defendants on Plaintiff's Fourteenth Amendment due process claim because he presumably asserts the claim on the same grounds asserted against Defendants Hayes and Harrison.  And,

like the claim against Hayes and Harrison, Plaintiff has not shown either that he was deprived of a constitutional or statutory right, or that the Meijer Defendants engaged in conduct that "shocks the conscience."

### B.      STATE LAW CLAIMS

#### i.      False Arrest, False Imprisonment and Malicious Prosecution (Counts I, II and VII)

Plaintiff alleges false imprisonment against the Meijer Defendants, false arrest and imprisonment against the VBT Defendants, and malicious prosecution against all of the Defendants.  All of these claims are premised on a lack of probable cause.  *See Lewis v. Farmer Jack Div., Inc*, 415 Mich. 212, 232 (1982);[5]  *Rivers v. Ex-Cell-O Corp*, 100 Mich. App. 824, 832 (1981).[6]  Therefore, these claims fail for the reasons already stated.  Defendants' motions for summary judgment on the claims set forth in Counts I, II and VII are granted.

#### ii.      Intentional Infliction of Emotional Distress (Count V)

In Count V, Plaintiff alleges intentional infliction of emotional distress ("IIED")

---

[5]A false arrest or imprisonment is an arrest or imprisonment:

   (1) of a person
   (2) who is innocent of the charge on which he is arrested
   (3) by the defendant or at his instigation
   (4) without legal justification.

415 Mich. at 232.

   [6]"The elements of a cause of action for malicious prosecution are: (1) a criminal prosecution instituted against plaintiff by defendant, terminating in plaintiff's favor, (2) absence of probable cause for the criminal proceeding, and (3) malice or a primary purpose in bringing the action other than bringing the offender to justice."  100 Mich. App. at 832.

against all of the Defendants.  To state a claim for IIED, Plaintiff must prove: (1)

'extreme and outrageous' conduct;  (2) intent or recklessness;  (3) causation;  and (4)

'severe emotional distress.'  *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602

(1985).  Quoting the Restatement, the *Roberts* court described the element of extreme

and outrageous conduct as follows:

> Liability has been found only where the conduct has
> been so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of
> decency, and to be regarded as atrocious, and utterly
> intolerable in a civilized community. Generally, the case
> is one in which the recitation of the facts to an average
> member of the community would arouse his
> resentment against the actor, and lead him to exclaim,
> 'Outrageous!'

422 Mich. at 603.  "Whether a defendant's acts were sufficiently outrageous depends

upon the context in which the defendant committed them."  *Bhama v Bhama*, 169 Mich.

App. 73, 80 (1988).  For instance, the extreme and outrageous character of a

defendant's conduct may arise when a defendant abuses a relationship which puts him

in a position of actual or apparent authority over plaintiff or gives the defendant power to

affect plaintiff's interests. *Warren v June's Mobile Home Village & Sales, Inc.,* 66 Mich.

App. 386, 391 (1976).

Again quoting the Restatement, the *Roberts* court described the severe

emotional distress requirement as follows:

> [Emotional distress] includes all highly unpleasant mental reactions,
> such as fright, horror, grief, shame, humiliation, embarrassment,
> anger, chagrin, disappointment, worry, and nausea. It is only where it
> is extreme that the liability arises. Complete emotional tranquillity is
> seldom attainable in this world, and some degree of transient and
> trivial emotional distress is a part of the price of living among people.
> *The law intervenes only where the distress inflicted is so severe that*

24

> *no reasonable man could be expected to endure it. (*emphasis in original).

*Roberts*, 422 Mich. at 609.  Seeking and receiving medical treatment is not a condition precedent to satisfying the element of severe emotional distress.  *McCahill v Commercial Union Ins. Co*, 179 Mich. App. 761, 771 (1989).  However, where a claim is based on emotional injury alone, "more in the way of outrage" may be required. *Roberts*, 422 Mich. at 609 (citing Restatement Torts, 2d § 46, Comment K, p. 78).

The facts and circumstances surrounding Plaintiff's arrest cannot reasonably be described as "extreme and outrageous," especially since there was probable cause for Defendants' actions. *See Bellamy v Target Stores,* 2002 W.L. 31934019, *4 (Mich. App. 2002)(unpub. op.)(where there was probable cause to detain plaintiff for suspected shoplifting, the fact that she was offended by the accusation did not rise to the level of extreme and outrageous conduct required); *Pennington v Dollar Tree Stores*, 28 Fed. Appx. 482, 489 (6th Cir. 2002)(unpub. op.)(allegation of theft that resulted plaintiff being arrested and spending the night in jail, even notwithstanding the fact that plaintiff stipulated that there was probable cause, did not rise to the high bar of outrageous and intolerable conduct).  Defendants' respective motions for summary judgment on this claim in Count V are granted.

### iii.    Defamation (Count VI)

Plaintiff alleges that he was defamed by the Meijer Defendants when he was prominently displayed in front of Meijer shoppers in the back of a police car while the Defendant officers, Chaney and Youmans discussed the charge brought against him. There is no merit to this claim.

25

"The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *Burden v Elias Brothers Big Boy Restaurants*, 240 Mich. App. 723, 726 (2000). Plaintiff's claim fails on the second element because the alleged defamatory statements were privileged.

Information given to police officers regarding criminal activity is absolutely privileged against claims of defamation. *Hall v Pizza Hut of America*, 153 Mich. App. 609, 619 (1986). There is also a qualified privilege that "extends to all communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty and embraces cases where the duty is not a legal one but is of a moral or social character of imperfect obligation." *Id.* "The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Gonyea v Motor Parts Federal Credit Union*, 192 Mich. App. 74, 79 (1991). A plaintiff can only overcome qualified privilege by showing actual malice, *i.e.,* knowledge of falsity or reckless disregard of truth. *Id.*

Plaintiff cites no authority for the proposition that the mere act of having Plaintiff in the back of a police car in full view of customers constitutes a defamatory statement. And, the only statements actually made by the Meijer Defendants that suggested

26

criminal wrongdoing by Plaintiff were made to the VBT Defendants in the course of reporting the alleged crime. Therefore, those communications are absolutely privileged. Alternatively, the Meijer Defendants enjoy qualified privilege because their statements were only made to the VBT officers, they unquestionably had an interest in the matter communicated to the VBT Defendants, and there is no evidence that they acted with bad faith, malice or reckless disregard for the truth.

Plaintiff asserts that Defendants are not entitled to assert privilege because it is an affirmative defense that they failed to plead. There is no merit to this assertion either. Under Michigan law, the absence of privilege is an element of a *prima facie* claim of defamation. *See Burden,* 240 Mich. App. at 726. Defenses that negate an element of a plaintiff's *prima facie case* are excluded from the definition of an affirmative defense, as set forth in Fed. R. Civ. P. 8(c). *Ford Motor Co. v Transport Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986). Consequently, Defendants were not required to plead privilege to preserve the defense.

The Meijer Defendants' motion for summary judgment on this claim in Count VI is granted.

### iv.   Abuse of Process (Count VIII)

Plaintiff alleges abuse of process against all of the Defendants. "To recover under a theory of abuse of process, plaintiffs must plead and prove [1] an ulterior purpose and [2] an act in the use of process that is improper in the regular prosecution of the proceeding." *Early Detection Center, P.C. v New York Life Ins. Co.,* 157 Mich. App. 618, 629 (1986). There is no evidence in the record to support either element of the claim. Moreover, Plaintiff seemingly abandoned the claim since he did not respond

27

to Defendants' respective requests for summary judgment.  Therefore, Defendants'

motions for summary judgment on this claim in Count VIII are granted.

### v.     Premises Liability/General Negligence and Negligent Hiring, Supervision and Training (Count IX)

Plaintiff brings his claim of premises liability/general negligence and negligent

hiring against Meijer alone.

### a.     Premises Liability

Plaintiff contends that he was a business invitee to whom Meijer owed a duty of

care to maintain its premises in a reasonably safe condition.  *See Swartz v Huffmaster*

*Alarms Sys. Inc.,* 145 Mich. App. 431, 434 (1985).  Relying upon the Michigan Court of

Appeals' unpublished opinion in *Bellamy v Target Stores, supra*, Plaintiff asserts, as did

the plaintiff in *Bellamy*, that Meijer employee Chaney was the unsafe condition on the

premises, because he falsely accused Plaintiff of theft.  As in *Bellamy*, however,

Plaintiff's claim fails because Defendant Chaney had probable cause for his actions.

The *Bellamy* Court pointed out that defendant merchant was permitted under the

Merchant's Privilege Statute, M.C.L. §600.2917,[7] to detain plaintiff if it, through its

---

[7]M.C.L. §600.2917(1) states in relevant part:

In a civil action against a . . . merchant . . . for false imprisonment, unlawful arrest, assault, battery, libel, or slander, if the claim arises out of conduct involving a person suspected of removing or of attempting to remove, without right or permission, goods held for sale in a store from the store . . . and if the merchant, library, agent, or independent contractor had probable cause for believing and did believe that the plaintiff had committed or aided or abetted in the larceny of goods held for sale in the store, . . . damages for or resulting from mental anguish or punitive, exemplary, or aggravated damages shall not be allowed a plaintiff, unless it is proved that the merchant . . . used unreasonable force, detained the plaintiff an unreasonable length of time, acted with unreasonable disregard of the plaintiff's rights or sensibilities, or acted with intent to injure the plaintiff.

employees, had probable cause to believe that Plaintiff shoplifted.  Because the Court found as a matter of law that defendant did have the requisite probable cause, it further found that plaintiff failed to raise a question of fact regarding whether defendant breached a duty owed to plaintiff.

*Bellamy* is factually analogous.  As already stated, Defendant Chaney had probable cause to believe that Plaintiff shoplifted.  Consequently, Plaintiff has not shown that Defendant Meijer breached a duty owed to him when he was, as it turned out, incorrectly accused of shoplifting.  Defendant Meijer's motion for summary judgment on Plaintiff's premises liability claim is granted.

### b.    Negligence and Negligent Hiring, Training and Supervision

Plaintiff does not cite any case law in which claims of negligent hiring, training or supervision are addressed by Michigan courts.  However, he contends that Meijer breached its duty to properly supervise and train Defendant Chaney for two reasons.  First, Plaintiff points out that Chaney had a similar experience two days prior to Plaintiff's arrest, in which he detained someone who had already discarded the item he saw the customer conceal.  Chaney said that he did not see the customer place the item on a shelf because the customer did so when another customer walked past and blocked Chaney's view.   Plaintiff argues that this incident was caused by the same kind of broken surveillance that occurred in his case (where Chaney's view was partially obstructed for two to three seconds), yet Chaney was not counseled or disciplined until two weeks after Plaintiff's arrest.  Second, Plaintiff says that Chaney's call to police was contrary to Meijer policy that the police are only to be called when Meijer intends to

29

prosecute and when the loss prevention officers have identified themselves to the suspect.

First, Plaintiff has not clearly articulated the legal duty he believes was owed to him concerning Chaney's training and supervision. Nor has he cited any authority showing that Michigan recognizes this cause of action and, if so, under what standard.[8] Second, Plaintiff cites no authority indicating that a legal duty can be imposed by a retailer's internal policies. In fact, the Michigan Supreme Court rejected such a finding by a lower court in *Buczkowski v McKay*, 441 Mich. 96 (1992). In *Buczkowski,* the trial court found that Kmart's internal policy of not selling ammunition to intoxicated customers was sufficient to impose a legal duty on Kmart not to do so. On appeal, the appellate court stated in a footnote:

> We disagree with the trial court. Imposition of a legal duty on a retailer on the basis of internal policies is actually contrary to public policy. Such a rule would encourage retailers to abandon all policies enacted for the protection of others in an effort to avoid future liability.

441 Mich. at 99 n.1. Absent any authority suggesting that Meijer's internal policies regarding when it will report retail fraud to the police created a legal duty by Meijer to its customers, the Court declines to find that such a duty existed. Defendant Meijer's motion for summary judgment on Plaintiff's negligence claim is granted.

### vi.    Concert of Action and Conspiracy (Counts X and XI)

---

[8]Plaintiff's citation to *Pennington v Dollar Tree Stores, Inc., supra*, does not provide any guidance. *Pennington* is an unpublished opinion interpreting Kentucky law on a common law claim of negligent hiring.

Under Michigan law, a plaintiff cannot sustain a claim of either concert of action[9] or conspiracy[10] without establishing an underlying tortious act.  *See Admiral Ins.*, 194 Mich. App. at 359; *Early Detection*, 157 Mich. App. at 632; *Cousineau v Ford Motor Co.,* 140 Mich. App. 19, 37 (1985).   Here, Plaintiff alleges that Defendants Harrison, Hayes, Chaney and Youmans worked together to tortiously deprive him of his constitutional rights, falsely arrest and imprison him, defame him, commit negligence, inflict emotional distress and maliciously prosecute him.  Inasmuch as the Court finds that Plaintiff failed to raise a question of fact on each of these alleged claims, his claims of concert of action and conspiracy necessarily fail.  Defendants' motions for summary judgment on both claims in Counts X and XI are granted.

## C.    DERIVATIVE CLAIMS

Plaintiff Jeffrey Boykin's wife and children, Adrian Boykin, Jeniece Boykin and Jeffrey Boykin, Jr. ("the Derivative Plaintiffs"), bring three derivative claims against all of the Defendants.  In Counts XII and XIII they allege loss of consortium, and in Count XIV they allege negligent infliction of emotional distress.  Because the Court grants summary judgment on each of Plaintiff Jeffrey Boykin's claims, the Derivative Plaintiffs' loss of consortium claims necessarily fail.  The Derivative Plaintiffs' negligent infliction of emotional distress claim fails on the merits.

---

[9]To establish concert of action, a plaintiff must show "that the defendants were jointly engaged in tortious activity as a result of which the plaintiff was harmed."  *Able v Eli Lilly and Co.,* 418 Mich. 311, 338 (1984).

[10]A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.  *Admiral Ins. Co. v Columbia Casualty Ins. Co.,* 194 Mich. App. 300, 358 (1992).

Although not formally adopted,[11] Michigan courts have recognized a cause of action for negligent infliction of emotional distress. *Wargelin v Sisters of Mercy Health Corp.,* 149 Mich. App. 75 (1986).  To sustain such a claim, Plaintiffs must prove:  (1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not presence, at least shock "fairly contemporaneous" with the accident.  *Id* at 81.

This cause of action has typically been applied to instances when a third party witnesses the violent death or injury of a family member.[12]  Therefore, it is not clear whether Michigan courts would recognize a claim on these facts.  However, because Plaintiffs failed to provide evidence to support a *prima facie* claim, it is not necessary for the Court to decide the question.

There is evidence that the Derivative Plaintiffs witnessed Jeffrey Boykin being taken into custody.  However, there is no evidence that he suffered or was threatened with injury or that any of the Derivative Plaintiffs suffered a shock that resulted in a "definite and objective physical injury" as a result of witnessing his arrest.  *Daley v LaCroix*, 384 Mich. 4, 12 (1970).  Consequently, the Derivative Plaintiffs failed to raise a

---

[11] *Hesse v Ashland Oil, Inc.,* 466 Mich. 21, 24 n. 6 (2002)(noting that NIED has not been recognized by the Michigan Supreme Court and declining to decide the validity of such an action).

[12] *See Wargelin, supra*; *Gustafson v Faris,* 67 Mich. App. 363 (1976).

question of fact on this claim.

Defendants' respective motions for summary judgment on the claims brought in

Counts XII, XIII and XIV are granted.

**V.    CONCLUSION**

Defendants' motions for summary judgment are **GRANTED** in their entirety.

Consequently, the Meijer Defendants' Motion to Exclude Gary Cumming's Testimony is

deemed **MOOT**.

**IT IS SO ORDERED.**


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 9, 2006

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
February 9, 2006.

s/Carol A. Pinegar
Deputy Clerk